# Case No. 6,374.

## The HENRY C. BROOKS.

[Blatchf. Pr. Cas. 99.] [1]

District Court, S. D. New York. Jan., 1862.

PRIZE—CONDEMNATION—CARGO—COSTS.

1. Vessel having been used by the enemy without the knowledge of her owners, and recaptured from the enemy, restored, by consent, with costs to the libellants.

2. Cargo condemned as enemy property, employed in aiding the insurrection on foot at the place of its capture, and as shipped with intent to run the blockade.

3. The subject of the rate of costs in prize cases deferred, to await the action of congress.

In admiralty.

BETTS, District Judge. This cause being regularly ordered on the calendar and called, and not being answered to by any claimant, the district attorney moved for judgment, and submitted the pleadings and proofs to the court. The vessel and cargo were arrested and taken as prize by the United States vessel-of-war Harriet Lane, on the 29th of August, 1861, within the outlet of the port of Washington, in North Carolina, and near Hatteras Inlet. She was sent to this port, and an information was filed against her by the United States and captors on the 16th of September thereafter, under process upon which she and her cargo were brought before the court. The libel charges that the vessel and cargo were owned, when arrested, by citizens or residents of that portion of the United States which is in insurrection against the laws and government of the United States, and that the vessel was then lying in a blockaded port, with the design to violate the blockade, and carry the cargo on a foreign voyage. A general answer and claim, in behalf of the Columbian Marine Insurance Company of the city of New York, and of several individuals, owners of the vessel, were put in the 15th of October thereafter, alleging ownership in themselves of the brig. No test oath was filed by the claimants, and no appearance was made in court to support the claim and answer on the hearing, but the parties libellants, with those who had intervened and answered, carried on subsequent proceedings essentially by mutual consents and stipulations in writing filed in court. Under these stipulations orders of various kinds were taken and entered in the suit, admitting and consenting that the vessel was "the property of loyal owners, citizens of the United States, and had been and was recaptured from the unlawful possession of the enemy, by whom she was illegally employed without the knowledge, privity, or consent of the owners thereof, and is, therefore, to be proceeded against in all respects as though the naval captors herein had filed a separate libel against the vessel for the military salvage of said vessel allowed by law"; and also admitted "that an order had been duly entered for the appraisement of the said vessel, in compliance with the consent of said parties, and that the report of such appraisement had been duly filed; that it was thereupon ordered by the court, on such consent and stipulation of the parties, that the vessel be restored to the aforesaid claimants thereof, upon their payment to the libellants, or to their proctors therein, of one-eighth part of such appraised value of the vessel, her tackle, &c., together with the costs of the proctors for the libellants, and such portion of the costs of the clerk and marshal as are exclusively applicable to the vessel, as the same may be assessed or entered by consent." By virtue of such arrangement and stipulations between the parties interested therein, all matters respecting the vessel and her equipments were disposed of by the parties concerned, without other than the passive action of the court thereon. No claim was interposed to the cargo or any part thereof. It consisted of cotton and naval stores, and was apparently in transit from the port of Washington, in North Carolina, for some foreign port, when the vessel was seized, after being deserted by the crew, and after all papers and evidences of the destination of the property or its ownership had been withdrawn or destroyed. The evidence found the cargo to be enemy property, the products of the country from which the attempt was making to transport it, which had been intercepted in Pamlico Sound, in or near Hatteras Inlet, by capture by the land and naval forces of the United States of the forts and places there, together with the vessel and her cargo aforesaid, there so found deserted. The vessel and cargo, according to the proof, were manifestly endeavoring to get out from an enemy port, then under blockade. Upon the evidence thus before the court, and in default of all appearance and defence to the suit, the libellants are entitled to a decree of condemnation and forfeiture on the libel against the cargo aforesaid.

No doubt, an essential object aimed at, among the questions brought into view in the papers presented in this and other prize suits, is to obtain a rule or order from the court fixing the rate or amount of fees or compensation to be allowed the officers concerned in conducting prize or seizure cases, or the principle upon which the same are to be computed or ascertained. The question has been repeatedly pressed upon the attention of the court since the commencement of this order of business during the present war. The difficulty manifested itself in the late war with Mexico, but to so small a degree as not to lead, at that time, to any definitive action on the subject by congress or the courts; and the opening of the existing hostilities threw the question upon the courts without any certain or satisfactory guide to the determination they are asked to make

[1] [Reported by Samuel Blatchford, Esq.]

This has produced delay in the final disposition of the point, in order to obtain from the concurrent action of the United States courts, or an appropriate legislative declaration, a uniform regulation, which shall meet and govern the entire subject. I am given to understand that a law is now under consideration before congress, which will probably obviate all existing difficulties in this respect. The court will, accordingly, still longer defer acting separately by itself on the matter of fees and costs in prize suits, trusting that the subject will be authoritatively settled by legislation within a brief period.

Judgment for condemnation and forfeiture of the cargo captured in this case is, therefore, ordered, in the usual form, both because the same was used and employed in aiding and promoting the insurrection on foot in the place of its capture, and because it was shipped and on transportation with the intent and endeavor to run the blockade of that port. The question of the rate and amount of costs is deferred until the further application of the libellants and the order of the court in respect to costs and expenses.